******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.*
KASON U. ESQUILIN
(AC 38762)

Keller, Elgo and Bear, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court
revoking his probation and sentencing him to a period of four years
incarceration following his arrest on charges of violating certain condi-
tions of his probation, including, inter alia, that he not use or possess
drugs or alcohol. At the probation revocation hearing, the state sought
to admit testimony from A, a probation officer, regarding the results of
drug tests performed on the defendant's urine during his probationary
period, and to introduce the reports of such results into evidence as an
exhibit. The defendant objected on the grounds that the admission of
the reports was an unreliable form of double hearsay and a violation
of his right to confrontation because A did not conduct the actual drug
testing. The trial court overruled the defendant's objection, ruling that
the testimony and the drug tests that were being offered did not consti-
tute unsupported testimonial hearsay. After finding that the defendant
had violated the terms of his probation, the court revoked his probation
and sentenced him to four years incarceration. Thereafter, the defendant
appealed to this court, claiming, for the first time, that the trial court
violated his right to due process by admitting the drug test reports into
evidence without requiring the state to introduce such results through
the testimony of the analysts who performed the actual testing. *Held*
that this court declined to review the defendant's unpreserved claim
that the trial court violated his right to due process by admitting the
reports into evidence, the defendant having failed to provide this court
with an adequate record for review of his unpreserved claim pursuant
to *State* v. *Golding* (213 Conn. 233); because the defendant did not
object at the probation revocation hearing to the admission of the reports
of the drug test results on the ground that their admission violated his
right to due process, the state was not given adequate notice of the
defendant's due process claim and did not provide the possible reasons
for not producing the analysts who had performed the drug tests as
witnesses at the probation revocation hearing, and, therefore, this court
could not balance the state's interest in not producing the persons who
performed the drug tests against the defendant's interest in confronting
those persons to determine whether a due process violation occurred.

Argued October 16, 2017—officially released January 30, 2018

*Procedural History*

Information charging the defendant with violation of
probation, brought to the Superior Court in the judicial
district of New London, where the matter was tried to
the court, *Williams, J.*; judgment revoking the defen-
dant's probation, from which the defendant appealed
to this court. *Affirmed.*

*Steven B. Rasile*, assigned counsel, for the appel-
lant (defendant).

*David J. Smith*, senior assistant state's attorney, with
whom, on the brief, was *Michael L. Regan*, state's attor-
ney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Kason U. Esquilin, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32 and imposing a four year prison sentence. On appeal, the defendant claims that the court deprived him of his right to due process by admitting into evidence reports of the results of drug tests performed on urine samples collected from the defendant, without requiring the state to introduce such results through the testimony of the analysts who performed the actual testing. We conclude, in accordance with *State* v. *Polanco*, 165 Conn. App. 563, 571, 140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016), that this claim was not preserved and that the record is inadequate to review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On April 28, 2008, the defendant was convicted of the underlying offense of the sale of hallucinogens/narcotics in violation of General Statutes § 21a-277 (a). On June 17, 2008, he was sentenced to ten years incarceration, execution suspended after two years, and three years of probation. The defendant was released from incarceration on September 10, 2010, and his probationary period began.

On March 21, 2012, the defendant was convicted of violating his probation pursuant to § 53a-32. He was sentenced to eight years incarceration, execution suspended after two years, and three years of probation. The terms of his probation, in addition to the standard conditions, required as special conditions, that the defendant (1) obey all federal and state laws, (2) not possess weapons, (3) submit to psychological evaluation and treatment, (4) take medications as prescribed, (5) submit to substance abuse evaluation and treatment, (6) not use or possess drugs and alcohol, (7) submit to random urine and alcohol sensor testing, (8) not associate with drug dealers, users, and gang members, (9) secure full time employment, and (10) pass a general education development course. On August 5, 2013, the defendant, after he reviewed the conditions of probation, acknowledged that he understood the conditions and would follow them. On August 27, 2013, the defendant again was released from incarceration and his probationary period commenced.

On January 29, 2014, an arrest warrant for the defendant was issued charging him with a violation of probation on the grounds that the defendant violated the following standard conditions of his probation: (1) "[d]o not violate any criminal law of the United States, this state or any other state or territory" and (2) "[s]ubmit

to any medical and/or psychological examination, urinalysis, alcohol and/or drug testing, and/or counseling sessions required by the [c]ourt or the [p]robation [o]fficer." The defendant also was charged with failing to comply with the following special conditions of his probation: (1) submit to substance abuse evaluation and treatment, (2) do not use or possess drugs or alcohol, (3) submit to random urine and alcohol sensor testing, (4) do not associate with drug dealers, users, or gang members, and (5) obey all federal and state laws. The defendant denied that he committed any violations and a probation revocation hearing was held on April 2, 2015.

After hearing evidence and argument, the court found that the state had proven, by a preponderance of the evidence, that the defendant had violated his probation. The court found,[1] in relevant part: "[Probation] Officer [Robert] Amanti of the Office of Adult Probation spoke with [the defendant] about the conditions of his probation, including his requirement that he successfully complete treatment and remain free of any illicit substance. . . . [The defendant] acknowledged those conditions. . . . [O]n August 15, 2013, the [defendant] was confronted about his substance abuse. . . . [The defendant] indicated he was proud of getting high[2] and was referred for treatment at [the Southeastern Council on Alcoholism and Drug Dependence (rehabilitation facility)]. . . . [The defendant], while on probation with the previously noted conditions, rendered several dirty urines on at least seven occasions while on probation. One of the urines dated [August 27, 2013,] was positive for [tetrahydrocannabinol (THC)] with a level of 757. The [defendant] did not successfully complete treatment at [the rehabilitation facility] and was unsuccessfully discharged.[3] The court finds that he was then rereferred to [the rehabilitation facility] by probation, and again was unsuccessfully discharged. . . .

"[P]robation elected to continue working with [the defendant] toward its intended goal of rehabilitation and did not submit a warrant for violation of probation, which would be a second violation of probation . . . [probation] continued to work with the [defendant] even after seven positive urines; and that the [defendant] eventually was arrested on [January 20, 2014]. . . . [The defendant's] conduct included grabbing the hair of a pregnant victim, pulling out at least one of her braids. . . . The [defendant] struck this pregnant female in the face with an open hand, causing pain. . . .[4] [The defendant] attempted to run away from the police and struggled with those police officers.[5] [The defendant committed the] crimes of breach of peace, assault in the third degree on a pregnant victim, [and] interfering with an officer . . . [and demonstrated an] inability to successfully complete treatment or to remain sober . . . . [Therefore] . . . the state . . . met its burden of proof by a preponderance of the

evidence, and [proved that the defendant] violated conditions of his probation for the aforementioned conduct." (Footnotes added.) After the conclusion of the dispositional phase, the court revoked the defendant's probation and sentenced him to four years of incarceration. This appeal followed.

The defendant's sole claim is that the court deprived him of his right to due process by admitting into evidence the reports of the results of drug tests performed on his urine samples without requiring the state to introduce such results through the testimony of the analysts who performed the actual testing.

The following additional facts are relevant to the disposition of this appeal. At the defendant's probation revocation hearing, the state sought to present testimony from Amanti about the results of the drug tests performed on the defendant's urine and to introduce the reports of such results into evidence as an exhibit. The drug tests were performed on samples of the defendant's urine collected by both probation and the rehabilitation facility between August, 2013, and December, 2013. These samples were sent to out-of-state laboratories to be analyzed and the laboratories would fax reports of the results to the Office of Probation. The analysts who performed the drug tests and authored the reports of the drug tests were not present to testify at the defendant's probation revocation hearing. The identity of these analysts is not explicitly contained in the record, nor is there any indication that the defendant had the opportunity to cross-examine these analysts prior to his probation revocation hearing.

During the state's direct examination of Amanti, the prosecutor asked him about the results of a drug test on one of the defendant's urine samples, collected on August 27, 2013. Before Amanti could answer, defense counsel objected on the basis that the report of the results of that drug test was not in evidence. Defense counsel argued that Amanti testifying about the drug test results was inadmissible because it was an unreliable form of double hearsay and a violation of the defendant's right to confrontation. With respect to the right to confrontation, defense counsel argued that admitting Amanti's testimony concerning the results of the drug test violated the defendant's right to confrontation as explicated by the Supreme Court in *Bullcoming* v. *New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011).[6] The prosecutor responded that *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)[7] and its progeny do not apply to probation revocation hearings. In response, defense counsel specified that, on the basis of the reasoning set forth in *Bullcoming*, the results of the drug test were unreliable hearsay without testimony from the person who performed the actual testing and were, thus, inadmissible. Defense counsel never explicitly argued that the admis-

sion of the test results violated the defendant's right to due process, which is his sole claim on appeal. The court overruled defense counsel's objection, finding "that the testimony being elicited now and the use of the document is not just a testimonial variety of hearsay that's unsupported. This is a document that the state wishes to reference through the testimony of [Amanti] along the lines of what is clearly admissible under Connecticut law . . . . So the court's going to at this point overrule the objection by the defense . . . ."

After the court ruled that Amanti could testify about the results of the drug test, the state opted to "skip a little ahead and do something a little different" by introducing the reports of the results of the drug tests as an exhibit at the hearing. Defense counsel objected to the admission of the reports as an exhibit, again arguing that pursuant to *Bullcoming*, the reports of the results of the drug test were inadmissible hearsay because Amanti did not conduct the actual testing. The court, overruling the defendant's objections, admitted the reports into evidence. All but one of the reports in the state's exhibit indicated that marijuana was detected in the defendant's urine samples collected while he was on probation. The prosecutor then asked Amanti whether the defendant's urine samples tested positive for THC, which is an indication of the use of marijuana, and Amanti answered that they did several times.

The state argues that the defendant's due process claim was not preserved because, at the probation revocation hearing, the defendant did not object to the admission of the reports of the results of the drug tests as a violation of his right to due process. As a result, the state argues that the record is inadequate to review the defendant's claim that the admission of the results denied him of his right to due process. In response, the defendant argues that the claim was preserved or, if the claim is unpreserved, it is nonetheless reviewable pursuant to *Golding*. We agree with the state.

We first turn to a brief review of the principles relating to probation and the defendant's rights at a probation revocation hearing. "[P]robation is, first and foremost, a penal alternative to incarceration . . . . [Its] purpose . . . is to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable. . . . [P]robationers . . . do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. . . .

"The success of probation as a correctional tool is in large part tied to the flexibility within which it is permitted to operate. . . . In this regard, modifications of probation routinely are left to the office of adult probation. When the court imposes probation, a defendant thereby accepts the possibility that the terms of probation may be modified or enlarged in the future pursuant to [General Statutes] § 53a-30. . . . To this end, probation officers shall use all suitable methods to aid and encourage [a probationer] and to bring about improvement in his [or her] conduct and condition. . . .

"The due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in the process of revoking the conditional liberty created by probation. . . . Among other things, due process entitles a probationer to a final revocation hearing . . . . A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence. . . . [T]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public. . . .

"On the other hand . . . a [probation] revocation proceeding . . . is not a criminal proceeding. . . . It therefore does not require all of the procedural components associated with an adversary criminal proceeding." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 180–83, 842 A.2d 567 (2004). As such, at a revocation proceeding, the state must prove each alleged violation of probation by a preponderance of the evidence in accordance with General Statutes § 53a-32[8] and Practice Book § 43-29.[9] Id., 183–84.

"The due process clause of the fourteenth amendment mandates certain minimum procedural safeguards before that conditional liberty interest [of probation] may be revoked." *State* v. *Polanco*, supra, 165 Conn. App. 570. Among these minimum procedural safeguards is the right to confrontation at a probation revocation hearing. See *Morrissey* v. *Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). With respect to the right to confrontation at a revocation of probation hearing, the Supreme Court has stated that minimum due process requires that the defendant be afforded "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation) . . . ." Id.[10] This court, with guidance from the Second Circuit Court of Appeals and the Federal Rules of Criminal Procedure, previously

determined that whether there is good cause for not allowing confrontation should be determined by using a balancing test, which requires the court to balance, "on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay. *United States* v. *Williams*, 443 F.3d 35, 45 (2d Cir. 2006); see also *United States* v. *Chin*, 224 F.3d 121, 124 (2d Cir. 2000)." (Internal quotation marks omitted.) *State* v. *Shakir*, 130 Conn. App. 458, 468, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011).[11]

This court recently concluded that a claim that a court denied a defendant's right to due process by admitting testimonial hearsay at a probation revocation hearing, without giving the defendant the opportunity to confront the declarant, was not preserved for appeal because the defendant, at the hearing, never argued to the trial court that it was required to conduct the balancing test discussed in *Shakir* to determine whether his right to due process had been violated. See *State* v. *Polanco*, supra, 165 Conn. App. 571. *Polanco* controls our determination as to whether the defendant's claim is preserved in the present case. As the record reveals, in both the defendant's initial objection to the admission of the reports of the drug test results and in the ensuing colloquy between defense counsel and the prosecutor, the defendant never argued that the trial court was required to conduct the balancing test to determine whether the admission of the reports of the drug test results denied him the right to due process. Accordingly, this claim was not preserved for appellate review.

The defendant contends that if his claim is unpreserved, it is nonetheless reviewable pursuant to *State* v. *Golding*, supra, 213 Conn. 239–240. *Golding* review, as modified in *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), allows this court to review an unpreserved claim when all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Polanco*, supra, 165 Conn. App. 572.

The appellate tribunal is free to respond to the defendant's claim by focusing on whichever *Golding* prong is most relevant. *State* v. *Santana*, 313 Conn. 461, 469–70, 97 A.3d 963 (2014). "[T]he inability to meet any one prong requires a determination that the defendant's claim must fail." (Internal quotation marks omitted.)

*State* v. *Soto*, 175 Conn. App. 739, 755, 168 A.3d 605, cert. denied, 327 Conn. 970,     A. 3d     (2017). We conclude that the defendant's claim does not satisfy the first *Golding* prong.

Our Supreme Court discussed the first prong of *Golding* in *State* v. *Brunetti*, 279 Conn. 39, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007), and stated: "[T]he defendant may raise . . . a constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review. The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred. Thus, as we stated in *Golding*, we will not address an unpreserved constitutional claim [i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred . . . ." (Footnotes omitted; internal quotation marks omitted.) Id., 55–56. Our analysis of whether the defendant's claim satisfies the first *Golding* prong is guided by our precedent in *Polanco* and *Shakir*. *Polanco* and *Shakir* both held that an unpreserved claim that a court violated a defendant's right to due process by admitting testimonial hearsay at a probation revocation hearing without according the defendant the right to confront the declarant did not satisfy the first *Golding* prong because the defendant did not object to the admission of such hearsay as a violation of the right to due process during the probation revocation hearing. *State* v. *Polanco*, supra, 165 Conn. App. 564–65, 576 (claim that court violated defendant's right to due process at probation revocation hearing by admitting laboratory test results without affording defendant opportunity to confront analyst who performed such tests was not reviewable pursuant to *Golding* because defendant did not object to admission of results as violation of his right to due process); *State* v. *Shakir*, supra, 130 Conn. App. 460, 468 (claim that court violated defendant's right to due process at probation revocation hearing by admitting videotape of social worker's interview with minor complainant without affording defendant opportunity to confront minor complainant was not reviewable pursuant to *Golding* because defendant did not object to admission of videotape as violation of his right to due process).

*Polanco* and *Shakir* control our resolution of whether the defendant's claim in the present case is reviewable pursuant to *Golding*.[12] Both cases held that in order for a claim that the admission of testimonial hearsay at a probation revocation hearing, without the opportunity to confront the declarant, is a violation of the right to due process to be reviewable pursuant to *Golding*, there must be an adequate record from the probation revocation hearing that enables the appellate tribunal to balance (1) the defendant's interest in con-

fronting the witness against (2) the government's reasons for not producing the witness and the reliability of the proffered hearsay. *State* v. *Polanco*, supra, 165 Conn. App. 575–76; *State* v. *Shakir*, supra, 130 Conn. App. 468. In order for the record to be adequate, the state must be given notice of the due process claim so that it can present its reasons for not producing the witness. See *State* v. *Polanco*, supra, 575. In both *Shakir* and *Polanco*, the state was not given notice because the defendants did not object to the admission of testimonial hearsay at their probation revocation hearings on the grounds that it was a violation of their right to due process. See *State* v. *Polanco*, supra, 575–76; *State* v. *Shakir*, supra, 462, 468. As a result, the record in each of those cases was inadequate for this court to balance the defendant's interest in confrontation against the state's reasons for not producing the witness and the reliability of the proffered hearsay. *State* v. *Polanco*, supra, 576; *State* v. *Shakir*, supra, 468.

Guided by our precedent, we conclude that the defendant in the present case failed to sustain his burden of providing this court with an adequate record to review his claim of a due process violation. The defendant, at the probation revocation hearing, did not object to the admission of the reports of the drug test results on the basis that the admission of such results violated his right to due process.[13] Therefore, the state was not given adequate notice of the defendant's due process claim and, accordingly, did not provide the possible reasons for not calling the analysts who performed the drug tests. As a result, we are unable to balance the state's interest in not producing the persons who performed the drug tests against the defendant's interest in confronting those persons. Without this basis, we cannot determine whether a violation of due process occurred and, thus, the record is inadequate for *Golding* review of the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Both parties have relied on the court's oral ruling of April 2, 2015. The record does not contain a signed transcript of the court's decision, as is required by Practice Book § 64-1 (a), and the defendant did not file a motion pursuant to Practice Book § 64-1 (b) providing notice that the court had not filed a signed transcript of its oral decision. Nor did the defendant take any additional steps to obtain a decision in compliance with Practice Book § 64-1 (a). In some cases in which the requirements of Practice Book § 64-1 (a) have not been followed, this court has declined to review the claims raised on appeal due to the lack of an adequate record. Despite the absence of a signed transcript of the court's oral decision or a written memorandum of decision, however, our ability to review the claims raised on the present appeal is not hampered because we are able to readily identify a sufficiently detailed and concise statement of the court's findings in the transcript of the proceeding. See *State* v. *Brunette*, 92 Conn. App. 440, 446, 886 A.2d 427 (2005), cert. denied, 277 Conn. 902, 891 A.2d 2 (2006).

[2] Amanti testified at the hearing that the defendant came to the Office of Adult Probation on August 15, 2013, for a scheduled visit. On that date, Amanti testified that the defendant stated that "he was proud of getting high and getting drunk."

[3] Amanti testified at the probation revocation hearing that because of

the defendant's use of drugs and alcohol, a probation officer referred the defendant to submit to treatment at the rehabilitation facility. Amanti testified that, despite the defendant's awareness that submitting to treatment at the rehabilitation facility was a condition of his probation, probation officers learned that the defendant did not successfully complete the treatment program at the rehabilitation facility. Moreover, Amanti testified that because of his continued use of marijuana, the defendant was again referred to submit to treatment at the rehabilitation facility. Amanti testified that the defendant failed to complete the treatment program for a second time.

[4] The defendant's girlfriend, the female to whom the court refers, testified at the probation revocation hearing that, while she was pregnant, the defendant pulled her off a couch by grabbing her by the braids, took her phone, and physically prevented her from leaving their shared apartment and when she did attempt to leave the apartment, the defendant grabbed her by the hair and struck her in the face with an open palm.

[5] Charles Flynn, a New London police officer, testified at the probation revocation hearing about arresting the defendant after he struck his pregnant girlfriend. Flynn testified that as he approached the defendant's apartment building in a marked police car, the defendant ran inside the building when he saw the police arrive. Flynn testified that, after he and another officer searched the building, they found the defendant hiding in an unlit basement. Furthermore, Flynn testified that after the defendant attempted to flee from the officers, the defendant began to fight the officers as they arrested him, jeopardizing the officers' safety.

[6] In *Bullcoming*, the Supreme Court was presented with the question of "whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Bullcoming* v. *New Mexico*, supra, 564 U.S. 652. The Supreme Court held "that surrogate testimony of that order does not meet the constitutional requirement. The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." Id.

[7] In *Crawford*, the Supreme Court stated, in a criminal trial: "Where testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination." *Crawford* v. *Washington*, supra, 541 U.S. 68.

[8] General Statues § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . .

"(c) Upon notification by the probation officer of the arrest of the defendant or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf. Unless good cause is shown, a charge of violation of any of the conditions of probation or conditional discharge shall be disposed of or scheduled for a hearing not later than one hundred twenty days after the defendant is arraigned on such charge.

"(d) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation

with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

[9] Practice Book § 43-29 provides: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. All other proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of the defendant's probation or his or her conditional discharge or by a written notice to appear to answer to the charge of such violation, which notice, signed by a judge of the superior court, shall be personally served upon the defendant by a probation officer and contain a statement of the alleged violation. All proceedings thereafter shall be in accordance with the provisions of Sections 3-6, 3-9 and 37-1 through 38-23. At the revocation hearing, the prosecuting authority and the defendant may offer evidence and cross-examine witnesses. If the defendant admits the violation or the judicial authority finds from the evidence that the defendant committed the violation, the judicial authority may make any disposition authorized by law. The filing of a motion to revoke probation, issuance of an arrest warrant or service of a notice to appear, shall interrupt the period of the sentence as of the date of the filing of the motion, signing of the arrest warrant by the judicial authority or service of the notice to appear, until a final determination as to the revocation has been made by the judicial authority."

[10] We surmise that the defendant by citing to *Crawford* and its progeny is asserting that the due process right to confrontation equates to the sixth amendment right to confrontation at a criminal trial. Whether *Crawford* applies at a probation revocation hearing has not been addressed by a Connecticut appellate court. Although it is not necessary to address this issue in order to resolve this appeal, we observe that, since *Crawford*, an overwhelming majority of federal circuit and state appellate courts that have addressed this issue have concluded that *Crawford* does not apply to a revocation of probation hearing. See, e.g., *United States* v. *Ferguson*, 752 F.3d 613, 619 (4th Cir. 2014) (revocation of parole proceeding "does not involve the Sixth Amendment"); *United States* v. *Lloyd*, 566 F.3d 341, 343 (3d Cir. 2009) ("[the] limited right to confrontation [afforded at a revocation proceeding] stems from the Fifth Amendment's Due Process Clause, not from the Confrontation Clause of the Sixth Amendment"); *United States* v. *Ray*, 530 F.3d 666, 668 (8th Cir. 2008) ("[t]he Sixth Amendment only applies to 'criminal prosecutions,' and a revocation of supervised release is not part of a criminal prosecution"); *United States* v. *Kelley*, 446 F.3d 688, 691 (7th Cir. 2006) ("*Crawford* changed nothing with respect to [probation] revocation hearings" because the "limited confrontation right in revocation proceedings was explicitly grounded in considerations of due process, not the Sixth Amendment"); *United States* v. *Rondeau*, 430 F.3d 44, 47 (1st Cir. 2005) ("[n]othing in *Crawford* indicates that the Supreme Court intended to extend the Confrontation Clause's reach beyond the criminal prosecution context"); *United States* v. *Hall*, 419 F.3d 980, 985–86 (9th Cir.) ("[w]e . . . see no basis in *Crawford* or elsewhere to extend the Sixth Amendment right of confrontation to supervised release proceedings"), cert. denied, 546 U.S. 1080, 126 S. Ct. 838, 163 L. Ed. 2d 714 (2005); *United States* v. *Kirby*, 418 F.3d 621, 627 (6th Cir. 2005) ("*Crawford* does not apply to revocation of supervised release hearings"); *United States* v. *Aspinall*, 389 F.3d 332, 343 (2d Cir. 2004) ("[n]othing in *Crawford*, which reviewed a criminal trial, purported to alter the standards set by *Morrissey/*[*Gagnon* v. *Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)] or otherwise suggested that the Confrontation Clause principle enunciated in *Crawford* is applicable to probation revocation proceedings"); *State* v. *Carr*, 167 P.3d 131, 134 (Ariz. App. 2007); *People* v. *Loveall*, 231 P.3d 408, 420 n.18 (Col. 2010) (Eid, J., concurring in part and dissenting in part); *Jenkins* v. *State*, Docket No. 133, 2004, 2004 WL 2743556, *3 (Del. November 23, 2004) (decision without published opinion, 862 A.2d 386 [Del. 2004]); *Peters* v. *State*, 984 So. 2d 1227, 1227 (Fla. 2008), cert. denied, 555 U.S. 1109, 129 S. Ct. 917, 173 L. Ed. 2d 127 (2009); *Ware* v. *State*, 658 S.E.2d 441, 444 (Ga. App. 2008); *State* v. *Rose*, 171 P.3d 253, 258 (Idaho 2007); *Reyes* v. *State*, 868 N.E.2d 438, 440 n.1 (Ind. 2007); *State* v. *Marquis*, 257 P.3d 775, 777 (Kan. 2011); *State* v. *Michael*, 891 So.2d 109, 115 (La. App.) writ denied, 904 So.2d 681 (La. 2005); *Common-*

*wealth* v. *Wilcox*, 841 N.E.2d 1240, 1243 (Mass. 2006); *Blanks* v. *State*, 137 A.3d 1074, 1087 (Md. Spec. App. 2016); *People* v. *Breeding*, 772 N.W.2d 810, 812 (Mich. App.) appeal denied, 773 N.W.2d 261 (Mich. 2009); *State* v. *Johnson*, 842 N.W.2d 63, 73 (Neb. 2014); *People* v. *Brown*, 32 A.D.3d 1222, 1222, 821 N.Y.S.2d 348, appeal denied, 7 N.Y.3d 924, 860 N.E.2d 994, 827 N.Y.S.2d 692 (2006); *Wortham* v. *State*, 188 P.3d 201, 205 (Okla. Crim. App. 2008); *State* v. *Gonzalez*, 157 P.3d 266, 266 (Or. App. 2007); *State* v. *Pompey*, 934 A.2d 210, 214 (R.I. 2007); *State* v. *Pauling*, 639 S.E.2d 680, 682 (S.C. App. 2006); *State* v. *Divan*, 724 N.W.2d 865, 870 (S.D. 2006); *State* v. *Walker*, 307 S.W.3d 260, 265 (Tenn. Crim. App. 2009); *Trevino* v. *State*, 218 S.W.3d 234, 239 (Tex. App. 2007); *Henderson* v. *Commonwealth*, 736 S.E.2d 901, 905 (Va. 2013); *State* v. *Abd-Rahmaan*, 111 P.3d 1157, 1160–61 (Wash. 2005).

[11] In *Shakir*, this court observed that the principles in *Morrissey* are codified in the Federal Rules of Criminal Procedure. *State* v. *Shakir*, supra, 130 Conn. App. 467. With respect to the right to confrontation, the Federal Rules mandate that at a probation revocation hearing the defendant should be afforded, "upon request, an opportunity to question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1 (b) (1) (B) (iii).

[12] The defendant neither distinguishes the present case from *Shakir* and *Polanco*, nor provides a basis for this court to conclude that those cases were wrongly decided. The defendant asserts that the determination of whether the admission of the reports of the drug test results, without allowing the defendant to confront the analysts who analyzed the defendant's urine, amounted to a violation of the defendant's due process rights only requires this court to make a legal conclusion. Yet, the defendant's argument is not persuasive because the legal conclusion the defendant requests requires the factual underpinnings as to why the analysts who performed the drug tests were not called to testify. Those facts are not contained in the record.

[13] At the probation revocation hearing, defense counsel cited *State* v. *Giovanni P.*, 155 Conn. App. 322, 338 n.14, 110 A. 3d 442, cert. denied, 316 Conn. 909, 111 A.3d 883 (2015), when objecting to the admission of the reports of the drug test results. A footnote in that case states: "When the trial court ruled on the objection [to out-of-court statements], it addressed the defendant's objection as to the credibility of the witness and the reliability of the hearsay statements. Thus, the defendant's claim on appeal that the admission of [the out-of-court declarant's] testimony denied him the right to confront and cross-examine witnesses was not presented to the trial court. We further note that, under *Golding*, the defendant's claim cannot be reviewed because it fails to satisfy the first prong, which requires that the record is adequate to review the alleged claim of error. *State* v. *Golding*, [supra, 213 Conn. 239]. Because the defendant failed to object to the admission of the testimony as a violation of his due process right to cross-examine an adverse witness, the court had no occasion to consider whether there was good cause not to allow confrontation. Therefore, the record is inadequate for review of that claim." (Internal quotation marks omitted.) *State* v. *Giovanni P.*, supra, 155 Conn. App. 338 n.14.

In the present case, during the hearing, defense counsel argued that "had there been an objection to hearsay . . . [in *Giovanni P.*]—it was not lab result hearsay; it was testimony—[the Appellate Court] might have considered the question." Although the defendant does not now argue on appeal that citing to this case preserved his claim or developed an adequate record for review, we observe that at the defendant's probation revocation hearing, defense counsel misconstrued the language in *Giovanni P. Giovanni P.* does not, contrary to what defense counsel suggested, support the contention that objecting to the admission of testimonial hearsay on hearsay grounds alone at a probation revocation hearing creates an adequate record for an appellate tribunal to review a claim that the admission of such testimonial hearsay denies a defendant his due process right to confrontation. Moreover, defense counsel's incorrect interpretation of *Giovanni P.* neither alerted the court that it needed to balance the defendant's due process right to confrontation against the state's interest in not presenting the witness, nor developed an adequate record for appellate review of the defendant's claim pursuant to *Golding*.