[Cite as *State v. Miller*, 2020-Ohio-131.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 19AP0003 |
| BROOKE MILLER | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the Morgan County Court of
Common Pleas, Case No. 15-CR-0003

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     January 15, 2020

APPEARANCES:

For Plaintiff-Appellee

MARK HOWDYSHELL
Morgan County Prosecutor

JANNA C. WOODBURN
Assistant Prosecuting Attorney
19 East Main Street
McConnelsville, Ohio  43756

For Defendant-Appellant

KEVIN J. GALL
33 West Main Street, Suite 109
Newark, Ohio  43055

*Hoffman, J.*

{¶1} Defendant-appellant Brooke Miller appeals the May 23, 2019 Sentencing Entry on Community Control Violation entered by the Morgan County Court of Common Pleas, which sentenced her to a period of incarceration of 24 months after finding she had violated a condition of her community control. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE[1]

{¶2} On April 28, 2015, Appellant was indicted on one count of aggravated trafficking in drugs, in violation of R.C. 2929.03(A)(1)(C)(1)(c), a felony of the third degree. Appellant appeared before the trial court on September 29, 2015, withdrew her former plea of not guilty, and entered a plea of guilty to the sole count contained in the Indictment. On November 23, 2015, the trial court sentenced Appellant to five years of community control.

{¶3} Parole Officer Matthew Cook filed a Motion to Revoke Community Control on February 26, 2019, alleging Appellant had violated Condition 1: "I will obey federal, state and local laws and ordinances. I will conduct myself as a responsible law-abiding citizen." Specifically, the motion alleged, "On or about 02/11/2019 the offender did knowingly cause another to believe that she would cause them serious physical harm."

{¶4} After Appellant waived the probable cause hearing, the trial court scheduled a full hearing on the motion to revoke for April 10, 2019. At the hearing, Parole Officer Cook testified Appellant came under his supervision on November 23, 2015. Due to issues with substance abuse, positive drug tests, multiple complaints Appellant was threatening others through social media, and an arrest and jail time, P.O. Cook

---

[1] A Statement of the Facts underlying Appellant's original conviction is unnecessary for our disposition of this appeal.

implemented a system of progressive discipline, which included increased reporting, increased drug testing, and substance abuse counseling. Despite the additional conditions, Appellant continued to harass and threaten individuals through social media, and continued to use drugs, testing positive for methamphetamines as well as, most recently, testing positive for methamphetamine, amphetamine, and cocaine. The last drug test occurred immediately following a court hearing approximately one month prior to the hearing on the motion to revoke. Appellant refused to participate in an intensive outpatient program which was recommended as a result of her substance abuse counseling.

{¶5} P.O. Cook testified regarding the current community control violation. P.O. Cook indicated he was contacted by an individual who was worried and upset about comments Appellant made to her through social media. The individual provided P.O. Cook with screen shots of the social media messages. P.O. Cook took the comments made by Appellant as a threat of physical harm or the use of a firearm. Over Appellant's objection, a copy of the social media post was admitted as State's Exhibit "A". P.O. Cook stated he showed the post to Appellant. Appellant admitted she sent the post, explaining she had given the individual money, asked the individual to pay her back, and an argument ensued. P.O. Cook read the post into the record. He indicated Appellant had been counseled in the past over similar conduct.

{¶6} The post read:

Bitch I know you real well I just seen you over in parkersburg you have smoked so much crack you don't even have a voice I was in rehab

with you bitch I know you really well fake ass crack whore I know your husband Carl and I know you and your nigger drug dealer just moved to Vienna I'm on my way to pick up Eric and he is going to take care of this and he will get my money that you and Michelle has smoked up I'm calling the beauty college that is my family you are sick bitch 80 lbs crackhead eat a fuckin cheeseburger put down the stem and eat bitch one way or the other if the crack don't kill you this 380 will.

**{¶7}**   On cross-examination, P.O. Cook testified he believed the individual who received the messages was in fear for her safety based upon the individual's description of the events.  P.O. Cook had reason to believe Appellant was in possession of a firearm. He explained an investigation had been initiated because Appellant's aggression and threats of violence were escalating.  As part of the investigation, P.O. Cook needed to determine whether Appellant was in possession of any firearms.   When he asked Appellant if she had a .380, Appellant stated she did and indicated she had given the firearm to her sister.   P.O. Cook reiterated Appellant admitted sending the messages. Appellant never suggested to P.O. Cook a third party was using her Facebook account to send the messages.

**{¶8}**   Appellant testified on her own behalf.  She stated her ex-husband had full and total access to her cell phone.  She left her phone unattended "all the time". Tr. at 28. Appellant and her ex-husband resided together on February 11, 2019, the date of the incident.  Appellant explained she met the individual to whom the messages were sent in rehab.  The individual owed her money and Appellant's ex-husband was aware of this

fact. Appellant testified she had not owned a firearm since July, 2016, and never owned a .380. Appellant alleged her ex-husband and the individual were having an affair. Appellant added the individual as well as another woman and "this black guy" had beaten her "to a pulp unconscious" on February 11, 2019. Tr. at 34. She added she was taken to jail rather than the hospital.

{¶9} Appellant recalled P.O. Cook advised her the Washington County Sheriff's Department was coming to her home to search for a .380. She informed her parole officer there were no guns in her residence. Appellant denied seeing the social media message until the day of the court hearing. She claimed P.O. Cook had only told her about the message, but did not show it to her.

{¶10} Via Journal Entry filed April 12, 2019, the trial court found Appellant had violated the terms of her community control supervision. The trial court sentenced Appellant to 24 months with credit for time served. The trial court memorialized the sentence via Sentencing Entry on Community Control Violation filed May 23, 2019.

{¶11} It is from the trial court's finding she violated the terms of her community control Appellant appeals, assigning as error:

> I. THE TRIAL COURT DEPRIVED MS. MILLER HER DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES BY ALLOWING HEARSAY EVIDENCE TO BE ADMITTED, THUS DENYING MS. MILLER HER RIGHTS OF CONFRONTATION.

II. THE STATE OF OHIO DID NOT PRESENT SUFFICIENT EVIDENCE THAT MS. MILLER HAD VIOLATED THE TERMS OF HER COMMUNITY CONTROL BY CAUSING ANOTHER TO BELIEVE THAT SHE WOULD CAUSE THEM SERIOUS PHYSICAL HARM.

I.

**{¶12}** In her first assignment of error, Appellant asserts the trial court violated her right to due process by admitting hearsay evidence and denying her the right of confrontation.

The Confrontation Clause

**{¶13}** The Confrontation Clause of the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Out-of-court statements by a witness which are testimonial in nature are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). If testimony qualifies as nonhearsay, it does not implicate the Confrontation Clause. *Id.* at 59, *citing Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985); *State v. Maxwell,* 139 Ohio St. 3d 12, 9 N.E.3d 930, 2014-Ohio-1019, ¶131. Evid. R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

**{¶14}** In *Blanks v. Maryland,* 228 Md.App. 335, 351–352, 137 A.3d 1074, 1083–1084 (2016), the Court of Special Appeals of Maryland observed:

In the twelve years since *Crawford* was decided, ten federal courts of appeals have addressed whether the *Crawford* standard for admissibility of testimonial hearsay applies in a revocation of probation (or parole) proceeding. All ten courts have held that because the rights guaranteed by the Sixth Amendment only apply to "criminal prosecutions," neither the Sixth Amendment right to confrontation nor the *Crawford* Court's interpretation of that right applies in such a proceeding.

**{¶15}** Since *Crawford*, "an overwhelming majority of federal circuit and state appellate courts that have addressed this issue have concluded that *Crawford* does not apply to a revocation of probation hearing." *State v. Esquilin,* 179 Conn.App. 461, 179 A.3d 238 (2018), at n. 10. (Citations omitted.)

Hearsay and Revocation Hearings

**{¶16}** As set forth by the United States Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the due process requirements of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), with regard to parole violation hearings, are applicable to probation revocation proceedings. The minimal due process requirements for final revocation hearings include:

(a) [W]ritten notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse*

*witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)*; (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole. (Emphasis added). *Gagnon v. Scarpelli*, 411 U.S. at 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), *citing Morrissey v. Brewer*, 408 U.S. at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

**{¶17}** "Whether there is 'good cause' for not allowing confrontation during a revocation hearing should be determined by using a balancing test. *State v. Fears*, 5th Dist. Richland No., 2018 -Ohio- 1468, citing *State v. Esquilin,* 179 Conn.App. 461, 472, 179 A.3d 238 (2018). "This test requires the court . . . to balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." (Citations omitted. Internal quotation marks omitted.)

**{¶18}** Parole Officer Matthew Cook testified he had been Appellant's parole officer since November, 2015, and continued to act in that capacity until the revocation hearing. P.O. Cook was directly contacted by the individual regarding Appellant's social media messages. He indicated he confronted Appellant regarding the messages, showing her screen shots of the same. Appellant admitted to P.O. Cook she sent the messages to the individual.

{¶19} Courts have "held that minimum due process requirements are satisfied where the parolee admits the alleged parole violation at the revocation hearing. *Helton v. Ohio Adult Parole Auth.* (June 26, 2001), Franklin App. No. 00AP–1108, 2001 WL 709946. We find Appellant was not denied her right to due process. P.O. Cook's testimony Appellant admitted she sent the social media messages was independently corroborated by other evidence presented at the hearing.

{¶20} Appellant's first assignment of error is overruled.

II.

{¶21} In her second assignment of error, Appellant challenges the trial court's determination she violated the terms of her community control as such finding was based upon insufficient evidence. Specifically, Appellant contends the state failed to establish she caused another to believe she would cause them serious physical harm.

{¶22} Because a community control revocation hearing is not a criminal trial, the state does not have to establish a violation with proof beyond a reasonable doubt. *State v. Wolfson*, 4th Dist. Lawrence No. 03CA25, 2004-Ohio-2750, 2004 WL 1178724, ¶ 7. See, also, *State v. Payne*, 12th Dist. Warren No. CA2001-09-081, 2002 WL 649403; *State v. Hylton*, 75 Ohio App.3d 778, 782, 600 N.E.2d 821 (4th Dist. 1991). Instead, the state need only present "substantial" proof a defendant willfully violated the community control conditions. See, *Hylton*, 75 Ohio App.3d at 782, 600 N.E.2d 821. "The test ordinarily applied is highly deferential to the decision of the trial court and is akin to a preponderance of the evidence burden of proof. Accordingly, the court's conclusion must be sustained if there is competent credible evidence to support it." *State v. Hayes*, 6th Dist. Wood No. WD–00–075, 2001 WL 909291 (Aug. 10, 2001) (Internal citations omitted). Additionally,

the "[d]etermination of the credibility of the witnesses is for the trier of fact." *State v. Brank*, 5th Dist. Tusc. No. 2006 AP 090053, 2007-Ohio-919.

**{¶23}** Once a trial court finds a defendant violated community control conditions, it possesses discretion to revoke the defendant's community control. In that event, appellate courts should not reverse trial court decisions unless it finds the trial court abused its discretion. *Wolfson*, 2004-Ohio-2750, 2004 WL 1178724, ¶ 8.

**{¶24}** Thus, the appropriate review in this matter is twofold. First, we review the record to determine whether there is some competent credible evidence to support the court's finding Appellant violated the terms of her community control. If so, then we review the sanction under the more deferential abuse of discretion standard. *In the Matter of C.M.C.*, 4th Dist. Washington No. 09CA15, 2009–Ohio–4223, ¶ 17; *State v. Amos*, 4th Dist. Gallia No. 15CA5, 2016-Ohio-917, ¶ 9.

**{¶25}** An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *State v. Firouzmandi*, 5th Dist. Licking No. 2006-CA-41, 2006-Ohio-5823, 2006 WL 3185175, ¶ 54.

**{¶26}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183. Reviewing courts should accord deference to the trial court's decision as the trial court is in the best position to observe the witnesses' demeanor, gestures, and voice inflections which cannot be

conveyed to us through the written record. *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846(1988).

{¶27} The evidence presented at the revocation hearing established P.O. Cook was contacted by an individual who was worried and upset about comments Appellant made to her through social media. The individual provided P.O. Cook with screen shots of the social media messages. P.O. Cook took the comments made by Appellant as a threat of physical harm or the use of a firearm. P.O. Cook stated he showed the post to Appellant. Appellant admitted she sent the post, explaining she had given the individual money, asked the individual to pay her back, and an argument ensued. Appellant stated her ex-husband had full and total access to her cell phone, and she left her phone unattended "all the time". Tr. at 28. Appellant explained her ex-husband was aware the individual to whom the messages were sent owed her money. Appellant alleged her ex-husband and the individual were having an affair. Appellant added she was in jail on February 11, 2018. Appellant denied seeing the social media message until the day of the court hearing. She claimed P.O. Cook had only told her about the message, but did not show it to her.

{¶28} We find there was relevant, competent, and credible evidence upon which the trial court could find Appellant violated the terms of her community control. The trial court, as the trier of fact, was free to accept or reject the testimony of the witnesses. The trial court clearly believed P.O. Cook's statement Appellant admitted sending the social media messages, which caused the recipient to become upset and sufficiently worried to contact P.O. Cook. We further find the trial court did not abuse its discretion in so finding and revoking Appellant's community control.

**{¶29}** Appellant's second assignment of error is overruled.

**{¶30}** The judgment of the Morgan County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Delaney, J. concur