[Cite as *State v. Fears*, 2018-Ohio-1468.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 17-CA-67 |
| VERN L. FEARS | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |


CHARACTER OF PROCEEDING:         Criminal appeal from the Richland County
                                                        Court of Common Pleas, Case No.
                                                        2012CR0846D


JUDGMENT:                                    Affirmed


DATE OF JUDGMENT ENTRY:         April 16, 2018


APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

GARY BISHOP                                  RANDALL FRY
PROSECUTING ATTORNEY               10 West Newlon Place
BY: JOSEPH SNYDER                        Mansfield, OH 44902
38 South Park Street
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Defendant-appellant Vern Fears ["Fears"] appeals the July 13, 2017 Judgement Entry of the Richland County Court of Common Pleas finding that he violated his community control sanctions.

*Facts and Procedural History*

{¶2} On February 4, 2013 in Richland County Court of Common Pleas, Case Number 2012-CR-0847 Fears was convicted of one count of Aggravated Burglary a felony of the first degree and one count of Robbery, a felony of the second degree. The trial court sentenced Fears to four years in prison on the Aggravated Burglary charge. On the Robbery charge, Fears was given a four year suspended prison sentence, with a mandatory five years of post-release control, and five years of community control to begin upon Fears' release from prison on the Aggravated Burglary charge.

{¶3} On November 23, 2016, Fears was released from prison and placed on probation / community control. On April 4, 2017, a "Notice of Hearing Probation Violation" was filed alleging that Fears had violated his probation. Fears pled to the violation and was found guilty by the trial court. By Judgment Entry filed May 8, 2017, Fears' community control was continued with the addition that he pay a $200.00 sanction and successfully complete "Thinking for a Change."

{¶4} On June 27, 2017, a "Notice of Hearing Probation Violation" was filed alleging that Fears had violated his probation. The Notice set forth in three separate counts the alleged violations.

{¶5} On July 12, 2017, a probation violation hearing was conducted by the trial court. Fears admitted to the allegations contained in Counts 2 and Count 3 but denied

the allegations contained in Count 1[1]. T. September 15, 2017 at 4-5. A hearing was held concerning Fears' violation of Count 1, which alleged that Fears "On or about 06/10/17… entered [a residence] without the consent of the person authorized to give consent" and further, "On or after 05/28/17…changed your residence without obtaining permission from your supervising officer." Id. at 4.

{¶6} The only witness called by the state during the revocation hearing was the probation officer, Mary Gates.

{¶7} Gates testified that Fears is on Community Control for the Robbery charge and Fears is on Post-release Control for the Aggravated Burglary charge. T. at 7. Gates testified that she went to the location that Fears was supposed to be residing on two occasions and no one answered the door. Gates left her card in the door on both occasions. T. at 9. Fears testified that she spoke on the telephone with Fears' wife on May 30, 2017, and she reported that he had not been home since May 28, 2017. T. at 10. Gates testified that on June 12, 2017, an officer from the Mansfield Police Department contacted her informing her that Fears went to the residence of his wife, kicked the door in and was shot by an alleged boyfriend who was at the home. T. at 11-13; 20. Gates also testified that The Northern Ohio Fugitive Task Force was attempting to locate Fears after this incident. T. at 13-14. Gates contacted the task force because she was in fear for the safety of Fears' wife. T. at 15. Fears further testified that Fears' wife had told her Fears was staying with his father in Cleveland. T. at 17.

---

[1] Count 2 alleged that Fears had failed to report for office visits every Tuesday as instructed; Count 3 alleged that Fears failed to attend Reentry Court as instructed.

{¶8}   After his arrest, Gates met with Fears who told her that he never changed his address and was still living in Mansfield, not Cleveland.  Fears claimed his wife was lying and trying to set him up.  T. at 21.

{¶9}   After listening to the testimony of Mary Gates, the Court ruled that Fears was guilty of changing his residence without obtaining permission from his supervision officer.  The Court said it based its ruling for a number of reasons.  The first reason the Court stated was that Fears' wife said so and that her testimony is uncontracted.  T. at 40.  The Court stated that Fears' wife had been a reliable reporter in the past so there was no reason to disbelieve her testimony.  T. at 40.  The Court also stated in its ruling that on June 10, 2017, that Fears could not get into his residence without kicking in the door.  T. at 40, 41.

{¶10}  On July 13, 2017, a Community Control Violation Journal Entry was filed.  The Court accepted Fears' admission to Community Control violations Count 2 and Count 3 and found Fears guilty of Community Control violation Count 1.  Fears was sentenced to 3 years of prison on the underlying charge of Robbery, along with 3 years of mandatory Community Control.

*Assignment of Error*

{¶11}  Fears raises one assignment of error:

{¶12}  "I. THE TRIAL COURT FAILED TO AFFORD THE APPELLANT A FULL AND FAIR PROBATION REVOCATION HEARING AS REQUIRED BY DUE PROCESS AND GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."

*Law and Analyses*

**{¶13}** In finding that Fears was guilty of Count 1 of his probation violation / community control violation, Fears argues that the trial court violated his right to confront and cross-examine his accusers and erred in permitting the probation officer to testify to the hearsay statement alleged made by Fears' wife. However, Fears did not raise the constitutional argument at trial. Fears only objected to hearsay in the form of the Mansfield Police detective telling Gates that Fears had kicked the door in to his wife's residence and was shot by the wife's boyfriend. T. at 12-13.

**STANDARD OF APPELLATE REVIEW**

**A. Plain error.**

**{¶14}** Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶15}** Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." Id. The Ohio Supreme Court recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable *probability* that the error resulted in prejudice— the same deferential standard for reviewing ineffective assistance of counsel claims."

(Emphasis sic.) Id. at ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). *Accord, State v. Thomas,* ___ Ohio St.3d ___, 2017-Ohio-8011, ___N.E.3d ____ (Oct. 4, 2017), ¶32-34.

{¶16} If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; the Supreme Court has "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.'" (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. *Accord, State v. Thomas,* ___ Ohio St.3d ___, 2017-Ohio-8011, ___N.E.3d ____ (Oct. 4, 2017), ¶32-34.

### B. Probation / Community Control revocation.

{¶17} "The privilege of probation rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the privilege." *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675 (6th Dist.), ¶19, *quoting State v. Bell*, 66 Ohio App.3d 52, 57, 583 N.E.2d 414 (5th Dist. 1990). "Because a community control revocation hearing is not a criminal trial, the state does not have to establish a violation with proof beyond a reasonable doubt." *State v. Wolfson,* 4th Dist. Lawrence No. 03CA25, 2004-Ohio-2750, ¶7; *see, also, State v. Payne*, 12th Dist. Warren No. CA2001-09-081, 2002-Ohio-1916; *State v. Hylton*, 75 Ohio App.3d 778, 782, 600 N.E.2d 821 (4th Dist. 1991). Instead, the state need only present "substantial" proof that a defendant willfully violated the community control conditions. *See Hylton*, 75 Ohio App.3d at 782[2]. "The test ordinarily applied is highly deferential to the decision of

---

[2]Prior case law governing probation revocations applies to the revocation of community control. *State v. Wolfson*, 4th Dist. Lawrence No. 03CA25, 2004-Ohio-2750.

the trial court and is akin to a preponderance of the evidence burden of proof. *See State v. Alderson*, 4th Dist. Meigs No. 98CA12, 1999 WL 713594 (Aug. 31, 1999). Accordingly, the court's conclusion must be sustained if there is competent credible evidence to support it. Id." *State v. Hayes*, 6th Dist. Wood No. WD-00-075, 2001 WL 909291(Aug. 10, 2001). Additionally, the "[d]etermination of the credibility of the witnesses is for the trier of fact." *Ohly*, 166 Ohio App.3d 808, ¶ 19. *See also, State v. Brank*, 5th Dist. Tusc. No.2006AP 090053, 2007-Ohio-919.

**{¶18}** Once a trial court finds that a defendant violated community control conditions, it possesses discretion to revoke the defendant's community control. In that event, appellate courts should not reverse trial court decisions unless a court abused its discretion. *Wolfson,* 2004-Ohio-2750, ¶8.

**{¶19}** An abuse of discretion exists where the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice, or where the judgment reaches an end or purpose not justified by reason and the evidence. *Tennant v. Gallick,* 9th Dist. Summit No. 26827, 2014-Ohio-477, ¶35; *In re Guardianship of S .H.*, 9th Dist. Medina No. 13CA0066–M, 2013–Ohio–4380, ¶ 9; *State v. Firouzmandi,* 5th Dist. Licking No. 2006–CA–41, 2006–Ohio–5823, ¶54.

1. The confrontation clause and post-release control / community control revocation hearings.

**{¶20}** The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

{¶21}  In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)*,* the Supreme Court of the United States held that out-of-court statements that are testimonial are barred, under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court.

{¶22}  In *Blanks v. Maryland,* the Court of Special Appeals of Maryland had the following observation,

> In the twelve years since *Crawford* was decided, ten federal courts of appeals have addressed whether the *Crawford* standard for admissibility of testimonial hearsay applies in a revocation of probation (or parole) proceeding.  All ten courts have held that because the rights guaranteed by the Sixth Amendment only apply to "criminal prosecutions," neither the Sixth Amendment right to confrontation nor the *Crawford* Court's interpretation of that right applies in such a proceeding.  *See United States v. Rondeau*, 430 F.3d 44, 47 (1st Cir. 2005) ("Nothing in *Crawford* indicates that the Supreme Court intended to extend the Confrontation Clause's reach beyond the criminal prosecution context"); *United States v. Aspinall*, 389 F.3d 332, 343 (2nd Cir. 2004) ("Nothing in *Crawford*, which reviewed a criminal trial, purported to alter the standards set by *Morrissey/[Gagnon*] or otherwise suggested that the Confrontation Clause principle enunciated in *Crawford* is applicable to probation revocation proceedings"); *United States v. Lloyd*, 566 F.3d 341, 343 (3rd Cir. 2009) ("The limited right to confrontation [afforded in a revocation proceeding] stems from the Fifth Amendment's

Due Process Clause, not from the Confrontation Clause of the Sixth Amendment."); *United States v. Ferguson*, 752 F.3d 613, 619 (4th Cir. 2014) (revocation of parole proceeding "does not involve the Sixth Amendment")9; *United States v. Kirby*, 418 F.3d 621, 627 (6th Cir. 2005) (*Crawford* does not apply to a revocation of probation proceeding because, by its text, the Sixth Amendment does not apply outside of a criminal prosecution); *United States v. Kelley*, 446 F.3d 688, 691 (7th Cir. 2006) ("*Crawford* changed nothing with respect to [probation] revocation hearings" because the "limited confrontation right in revocation proceedings was explicitly grounded in considerations of due process, not the Sixth Amendment"); *United States v. Ray,* 530 F.3d 666, 668 (8th Cir. 2008) (*Crawford* does not apply in the context of a revocation of supervised release proceeding); *United States v. Hall,* 419 F.3d 980, 985 (9th Cir. 2005*), cert denied*, 546 U.S. 1080, 126 S.Ct. 838, 163 L.Ed.2d 714 (2005) (*Crawford* does not apply in a revocation of probation proceeding where "due process standard[s] [are] used to determine whether hearsay evidence" is admissible); *Curtis v. Chester*, 626 F.3d 540, 544 (10th Cir. 2010) (Sixth Amendment right to confrontation does not apply in parole revocation proceeding and "neither do any Supreme Court cases dealing with it, specifically *Crawford* "); *Ash v. Reilly,* 431 F.3d 826, 829 (D.C.Cir 2005) (due process rights afforded to a parolee at a revocation proceeding emanate from the Due Process Clause of the Fourteenth Amendment, not the Confrontation Clause of the Sixth Amendment, thus making *Crawford*

inapplicable in that setting). *See also Reyes v. State*, 868 N.E.2d 438, 440 & n. 1 (Ind. 2007) (holding that *Crawford* has no application in a civil revocation of probation proceeding); *State v. Carr*, 216 Ariz. 444, 167 P.3d 131, 134 (App.2007) (probation revocation proceeding is not "a stage of a criminal prosecution" and thus does not implicate the Sixth Amendment). 228 Md.App. 3335, 351-352, 137 A.3d 1074, 1083-1084(2016). *Accord, State v. Esquilin,* 179 Conn.App. 461, __ A.3d___ (2018), at n. 10. (since *Crawford* "an overwhelming majority of federal circuit and state appellate courts that have addressed this issue have concluded that *Crawford* does not apply to a revocation of probation hearing." (Citations omitted.)).

2. Hearsay and post-release control / community control revocation hearings.

{¶23} As set forth by the United States Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656(1973), the due process requirements of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484(1972), with regard to parole violation hearings, are applicable to probation revocation proceedings. The minimal due process requirements for final revocation hearings include:

(a) [W]ritten notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) *the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)*; (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or

lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking (probation or) parole. (Emphasis added).

*Gagnon v. Scarpelli*, 411 U.S. at 782, 93 S.Ct. 1756, 36 L.Ed.2d 656(1973), *citing Morrissey v. Brewer*, 408 U.S. at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484(1972).

**{¶24}** Whether there is "good cause" for not allowing confrontation during a revocation hearing should be determined by using a balancing test. *State v. Esquilin,* 179 Conn.App. 461, 472 __ A.3d___ (2018). This test requires the court to "to balance, "'on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay. *United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006); *see also United States v. Chin*, 224 F.3d 121, 124 (2d Cir. 2000).' (Internal quotation marks omitted.) *State v. Shakir,* 130 Conn. App. 458, 468, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011)." *Esquilin,* 179 Conn.App. at 473. In *Blanks v. State*, the court observed,

> "[G]ood cause need not reach the high standard governing the admissibility of hearsay evidence at criminal trials." *Fuller,* 308 Md. at 553 n. 5, 520 A.2d 1315. "In determining whether there is good cause to admit hearsay in a probation revocation hearing, it is obvious that the most important factor is the reliability of the proffered hearsay evidence" and "whenever the proffered hearsay evidence has substantial guarantees of trustworthiness the hearsay is admissible without the need to establish any additional good cause." *Bailey*, 327 Md. at 699, 612 A.2d 288 (*citing Egerstaffer v. Israel*, 726 F.2d 1231, 1234–35 (7th Cir. 1984)).

228 Md.App. at 355, 137 A.3d at 1085.

{¶25} The Ohio Supreme Court has also recognized that there is a limitation on the admissibility of hearsay testimony during revocation proceedings. In *State v. Tims*, 9 Ohio St.2d 136, 224 N.E.2d 348(1967), the defendant was prosecuted for statutory rape, and, at trial, a document entitled "Report of Examination for Alleged Rape" was admitted in evidence through a clerk in the medical record room of the hospital who admitted that she had not made the examination and was not present when it was made. The question before the court in that case was "whether the report of the examination for alleged rape was properly admitted into evidence under the provisions of Section 2317.40, Revised Code (Business Records as Evidence Act)." It was held that the Business Records as Evidence Act was not applicable. *See also, State v. Miller,* 42 Ohio St.2d 102, 104-105, 326 N.E.2d 259(1975).

{¶26} In *State v. Miller,* the Ohio Supreme Court held.

Where at a probation revocation hearing the trial court permits a probation officer who did not prepare the entries in the probation department record to testify as to the contents of that record and the probation officer who prepared the entries does not appear, there is a denial of the probationer's right to confront the witnesses against him, and, where the record does not show that the probation officer who prepared the entries was unavailable *or that a specific finding was made of good cause for not allowing confrontation*, there is a denial of the minimum requirements of due process of law required for probation revocation proceedings. (*Morrissey v.*

*Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656, followed.)

42 Ohio St.2d 102, 104-105, 326 N.E.2d 259, at syllabus (emphasis added).  The Court found that,

> The record here does not indicate that appellee's original probation officer, although no longer employed by the probation department, was unavailable, *or that the trial court made a specific finding of good cause for not allowing confrontation.*  The trial court, therefore, did not provide appellee the minimum due process requirements specified in *Morrissey* at his probation revocation hearing.

42 Ohio St.2d 102, 106, 326 N.E.2d 259 (emphasis added).

{¶27}  In the case at bar, Fears only objected to testimony by the probation officer that Fears had kicked in the door to his wife's residence.  T. at 12.  However, the probation officer without objection previously testified to these facts.  T. at 11-12.

{¶28}  Courts have "held that minimum due process requirements are satisfied where the parolee admits the alleged parole violation at the revocation hearing.  *Helton v. Ohio Adult Parole Auth.* (June 26, 2001), Franklin App. No. 00AP–1108, 2001 WL 709946.  This principle was recognized in *Morrissey, supra*, 408 U.S. at 490, 92 S.Ct. 2593, 33 L.Ed.2d 484, wherein the United States Supreme Court stated that "[i]f it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter."  *Wilkins v. Timmerman-Cooper,* United

States District Court, S.D. Ohio, Case No. 2:06-cv-00027, 2006 WL 3762122(Dec. 20, 2006), at *7.

**{¶29}** In the case at bar, Fears admitted two of the three violations thus establishing minimum due process requirements for those violations. In addition,

> Moreover, once a revocation hearing satisfies minimum due process requirements, the decision to deny parole is not subject to judicial review unless parole is revoked for a constitutionally impermissible reason. *Helton, supra, citing Mayrides v. Ohio Adult Parole Auth.* (Apr. 30, 1998), Franklin App. No. 97APE08–1035, 1998 WL 211923. Under R.C. 2967.15, the Ohio Adult Parole Authority is authorized to revoke parole when the parolee has violated the terms and conditions of his parole. *State ex rel. Nedea v. Capots* (1988), 40 Ohio St.3d 74, 75, 531 N.E.2d 707. Therefore, Wilkins's four parole violations were sufficient grounds for the revocation of his parole.

*Wilkins v. Wilkinson*, 157 Ohio App.3d 209, 2004-Ohio-2530, 809 N.E.2d 1026, ¶22.

**{¶30}** After finding that the defendant has violated community control sanctions, the sentencing court may: (1) extend the period of the same community control sanction, but not beyond the five-year maximum; (2) impose a more restrictive community control sanction for any remaining period of time up to the five-year maximum; or (3) cancel the community control sanction and impose a definite sentence of imprisonment within the range allowed for the offense under RC 2929.14(A). R.C. 2929.15(C).

**{¶31}** In the case at bar, by Fears' own admissions the trial court had substantial proof that Fears violated the community control sanctions. Fears had previously violated

community control sanctions and the trial court modified those sanctions. Under R.C. 2929.15(C), the trial court had authority to cancel the community control sanctions and impose a prison sentence, even if it found Fears had not violated Count 1.

{¶32} Fears has failed to demonstrate a reasonable *probability* that any error resulted in prejudice that affected the outcome of the revocation proceedings. The trial court neither lost his way nor created a miscarriage of justice in convicting and sentencing Fears for violating his community control sanctions.

**CONCLUSION.**

{¶33} Fears' sole assignment of error is overruled. The judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Delaney, J., and

Wise, Earle, J., concur